SARAH REDMAN, APPELLEE, V. FIDELITY ACCIDENT INSUR-
ANCE COMPANY, APPELLANT.

FILED MARCH 26, 1912.  No. 16,645.

Insurance: PAYMENT OF PREMIUMS. An accident insurance company received from its collector the amount of premium money due from a member for the renewal of monthly insurance. It appeared that the collector, pursuant to an agreement with the member, furnished the money on the pay-day, placed it in a separate fund with that collected from other members and remitted the whole amount to the company at the usual time. The company, having heard of the death of the insured before the receipt of the money from the collector, retained the premium money of all except the deceased member which it attempted to return to the collector by check. *Held*, That it was immaterial who furnished the money, and that, under these facts, the insurance was in force at the time of the death of the insured.

APPEAL from the district court for Boone county: JAMES R. HANNA, JUDGE. *Affirmed.*

*Burkett, Wilson & Brown,* for appellant.

*H. C. Vail* and *J. A. Price, contra.*

LETTON, J.

The plaintiff is the beneficiary under a policy issued by the defendant, an accident insurance company, to Charles C. Redman, her son, who was killed in a railroad accident on the 7th day of October, 1908. The policy was issued on June 1, 1908. By its provisions the defendant "hereby insures Charles C. Redman, of St. Edward, Ne-

braska, for the term of one calendar month from noon, standard time, of the 1st day of June, 1908, and for such further periods of time stated in renewal receipts as the payment of premium specified therein will maintain this policy and insurance in force." The question involved is whether this policy was in force at the time Redman was killed. The petition pleads the issuance of the policy and renewal receipts extending the policy until October 1, 1908. It is further alleged that on the 1st of October, 1908, one Frank Bruno, the defendant's agent at St. Edward for the collection and transmission of assessments due from members in that vicinity, paid for Redman $1 for the renewal of the policy for the month of October, 1908, that Bruno was accustomed to making such payments for members residing in that vicinity, and it was the custom of defendant to receive all such payments and extend the policies of all persons for whom payments were so made. The defense is that Redman defaulted in the payment of the premium due on October 1, and that by such failure his certificate lapsed.

Two assignments of error are presented: That the court erred in admitting the original answer of defendant in evidence; second, that it erred in giving the following instruction: "You are instructed that if you find from the evidence that Frank Bruno, pursuant to an agreement between himself and Charles C. Redman, took of his own money the amount of Charles C. Redman's assessment for the month of October, 1908, and placed the same with the moneys paid by the other members of the defendant company, and credited the said Redman with the amount thereof on the first day of October, 1908, on the notice of assessment sent him by said company, and remitted all such moneys to the defendant company, and that the defendant retained all such moneys except that of said Redman, still such payment and remittance is payment by Redman, and on that issue your finding should be for the plaintiff."

We think it only necessary to notice the latter assign-

ment.   Mr. Bruno testified, in substance, as follows:   I was collector for the defendant company from about the 1st of June until November, 1908.   The middle of the month before assessments became due I received a state- ment from the company stating those I was to collect from, and on the 1st of the month I paid the assessments of those who had not paid and were good fellows in town. This money I placed in a fund by itself and left it at home with my wife and generally remitted to the company at Lincoln from the 5th to the 7th or 8th of the month.   On October 1, 1908, I paid Redman's assessment, marked it paid on the slip, and put the money by itself in the fund with the rest of it.   Mr. Redman told me any time he didn't pay his assessment on the 1st of the month for me to pay it for him, and for me to call at the barber shop at any time and he would pay it to me.   It was in perform- ance of that understanding I paid the money on the 1st of October, 1908.   I didn't see Redman on or after the 1st of October.   About the 8th or 9th I sent the money in the fund to the defendant company with all of the dues for all of the members at the same time.   They kept the other money and sent me a check for $1, refusing to ac- cept Redman's assessment.   Cross-examination:   Exhibit No. 2 is the list that I received from the defendant con- taining the names of the parties from whom to collect, and upon which I remitted for Mr. Redman.   The entries thereon made in pencil, giving the date of October 1 and the amount of the assessment in each case, were made on that day, October 1.   I sent exhibit No. 2 to defendant by mail about the 7th or 8th of October after I learned of the death of Redman.   Didn't notify them he was dead.   I have the check the company returned to me in my pos- session, not cashed.   For the defendant Mr. Corrick, its president, testified, in substance, that Bruno had no au- thority to make any other arrangement for the payment of the assessments than the receipt of the money; that he, Corrick, had no knowledge until the day before the trial as to the time of the payment of the October assessments,

except the information contained in exhibit No. 2; that he received this on October 9, 1908, and at that time knew that Redman had already been killed; that he received $12.50 at the same time and returned by check the $1 represented by Redman's assessment.    Exhibit No. 2 is as follows:

"FIDELITY ACCIDENT INSURANCE COMPANY.
                "LINCOLN, NEB., September 19, 1908.
"Mr. F. M. Bruno, St. Edward, Neb.
    "DEAR SIR:    Below is a list of members who have an assessment due October 1st.    You are to detach and retain the duplicate sheet, sending in the original with amount collected less commission.    *    *    *

| Name | No. | Amount | Date Paid |
|---|---|---|---|
| Bruno, F. M...... ................ | 1480 | 1.00 | Oct. 1, 1908 |
| * * * * * * | * | * * | * * |
| Redman, Chas. E....... ........... | 1490 | 1.00 | Oct. 1, 1908" |

The amounts of money paid and the date of payment as shown in the two columns above were written in pencil by Bruno.

The insurance provided for by the contract is clearly term insurance from month to month, hence the policy expired by its terms, unless renewed on the first of each succeeding month by the payment of the premium.    The testimony of the collector is undisputed that on the 1st day of October he paid the amount due for the insured, placed it in a fund separate from his other money, and on that day marked the amount paid upon the list sent him. The company did not expect or require payment at its office in Lincoln on the first day of each month.    The renewal receipts in evidence show they are dated after the time Bruno says he sent the money in August and September and it retained all the money sent for October except that sent for Redman.    This was evidently returned for the reason that Mr. Corrick had learned of Redman's death before the money reached Lincoln.    Under these circumstances, Bruno, after he had credited Red-

man and had placed his premium money in a separate fund, became liable to defendant for the amount, as well as for that paid by the other members. The arrangement by which Bruno paid the money for Redman and looked to Redman for repayment was a personal one. If the premium was in fact paid on October 1, it was immaterial to the defendant company who furnished the money to pay it. 1 Cooley, Briefs on Law of Insurance, 484, and cases cited; *Puls v. Grand Lodge, A. O. U. W.,* 13 N. Dak. 559.

We are of opinion that the instruction complained of correctly stated the law. Having reached this conclusion, it is unnecessary to consider the other assignments of error.

The judgment of the district court is therefore

AFFIRMED.

REESE, C. J., not sitting.